RODRÍGUEZ, PLAINTIFF AND APPELLANT, *v*. PORTO RICO RAILWAY, LIGHT & POWER CO., DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action for Damages.

No. 2477.—Decided July 28, 1923.

DAMAGES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE—EVIDENCE.—In this action for damages because of the negligence of an electric car company the evidence showed that the plaintiff was in a stooping position bailing out water which had accumulated during the noon hour while he was absent. He was about two feet from the track with his back turned toward San Juan, from which direction the car was coming. It seems that he had been working for several hours in this stooping position with one foot somewhat higher than the other. According to his own testimony, he had changed his position several times without difficulty in order to avoid the other cars that had passed. The motorman saw him in this dangerous position from four or five meters away, but could not stop in time and the plaintiff was struck by the car. It does not appear that the motorman had an opportunity to see him sooner. There was evidence tending to show that there was a slight curve and a crowded street before arriving at the place of danger where there was also a mound of earth near the hole where the plaintiff was working. *Held:* That the contributory negligence of the plaintiff is evident and there is no reason for applying the rule of the "last clear chance" which was not relied on in the court below.

APPEAL—TRANSCRIPT OF EVIDENCE—CONSTITUTIONAL LAW.—In this case the Supreme Court ratified the doctrine laid down in the case of *Rodríguez* v. *Porto Rico Railway, Light & Power Co.*, 30 P. R. R. 869, in so far as it upheld the constitutionality of Acts No. 27 of 1917 and No. 81 of 1919 relative to the transcript of the evidence on appeal.

The facts are stated in the opinion.

*Messrs. Texidor & De la Haba* for the appellant.

*Messrs. J. H. Brown, P. Amado Rivera* and *M. Acosta Velarde* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

On the fifteenth day of October, 1918, the complainant, an employee of the Municipality of San Juan, was repairing an underground pipe leading to the aqueduct and was stationed for this work on the principal road or street of San Juan between Stops 15 and 16. On the same road the defendant railway maintains a system of trolley cars. The complainant suffered an accident which he ascribed to the negligence of the defendant. The latter denied its negligence and also set up the contributory negligence of the complainant. The court below, in its opinion, found that the defendant was negligent, but rendered judgment in favor of the said defendant on the ground of contributory negligence. In the course of its opinion the court said:

"The case having been tried and the evidence heard, the court finds that the defendant's negligence has been duly proved; that in the discharge of his duties on the day and at the place mentioned, the plaintiff was repairing a water pipe about two feet from the street-car track; that realizing the danger while engaged in such work on the morning of the said day, plaintiff put on a man to warn him of the approach of the company's cars, but failed to do so in the afternoon, simply withdrawing when he heard the cars approach; that the motormen of such cars were in the habit of warning him by ringing the bell, and that he did not hear the car, but felt a severe blow that knocked him unconscious.

"The court believes that the defendant company was negligent because it is of the opinion that the facts show that the car was going at great speed; that the motorman did not ring the bell and that his statement that he did not see the plaintiff denotes the little care he took in the discharge of his duties; but the court also finds that the plaintiff was guilty of contributory negligence, since, knowing that he was working in a perilous place, he failed to take the precautions that he took during the morning hours and relied in the afternoon on the precautions he thought the motorman would take, without any apparent reason that would justify the plaintiff in disregarding the precautions that he took during the morning."

The appellant attacks this quoted finding and shows, or attempts to show, that there was no such adviser or look-out. That there was such adviser or look-out in the morning of the day when the accident occurred is unquestionable, although the court may have been somewhat mistaken in its summing up of the evidence. There was testimony tending to show that the other man referred to was likewise a workman on the same job under the orders of the complainant, who, when he was near, gave a warning, but who was not always near.

We agree with the appellant that there is no application of the fellow-servant doctrine or any shifted responsibility by reason of the failure of the other employee to advise complainant, but we cannot agree that any of these considerations relieved the complainant from exercising due care. It was the duty of the complainant to observe the approaching cars and protect himself. The court's opinion is quite susceptible of being interpreted that the complainant took no precautions to protect himself. The appellant admits in his brief that he was working at a hole close to the trolley, but maintains that he relied on the custom of the company to notify him.

We agree with the appellant, as was found by the court below, that the defendant was guilty of negligence in not ringing its bell as well as in proceeding so rapidly, but we hold that the complainant had no right to rely on the alleged custom or practice of the company. He still should exercise due care.

The appellant cites from Thompson on Negligence, page 203, as follows:

"The proper discharge of their employment necessarily absorbs their care and attention. They can not keep their eyes on their work and at the same time look up and down the street for approaching cars or vehicles. Their situation is passive. They are driving no instrument of danger. It follows, both on moral and legal grounds, that if, while so absorbed at their work, they fail,

even through inattention or negligence, to see an approaching street car in time to get out of the way and avoid it, this will not exonerate the street railway company, if the car is driven upon them under such circumstances that the driver, gripman or mortorman might, by the exercise of ordinary or reasonable care, have seen them at their work in their exposed position, and might, by the exercise of like care, have warned them in time, or checked his car in time to avoid running upon them.''

On the other hand, the appellee cites authorities to the effect that the recited duty on the part of the defendant does not relieve the complainant from all duty or care. The following citation from 25 R. C. L. 1287, bears upon the question:

''It is, however, well settled that the fact that one who is injured by a street car is a workman engaged in his occupation does not relieve him from the effect of his own negligence. He must exercise a reasonable amount of care for his own safety, and must not rely entirely on those in charge of the car to give him notice of its approach, and if his own negligence contributes to his injury he can not recover therefor. The courts generally require a person working on the streets on or near a street car line to govern his conduct by his knowledge of the fact that cars are frequently passing and that for injuries caused by his failure to keep in mind that fact and act accordingly he will be chargeable with contributory negligence. Thus where one working in a trench under the track of a street railway, knowing that cars frequently passed over the track, put his hand on the rail while one of the cars was passing, it was held as matter of law, that he was guilty of negligence and that no recovery could be had for his injuries. So it has been decided that a crossing repairer who knew that cars passed at frequent intervals the place at which he was working, was guilty of negligence in placing a plank so near the track that it was struck by a passing car and inflicted an injury on him. And a laborer removing dirt from a street, who assumed a position of danger on a track by turning his back to the direction from which cars uniformly approach and who was familiar with the movements of cars over the street has been held to be guilty of such negligence as would preclude a recovery for his death. Where a laborer who is familiar with the frequency with which cars pass the point at which he is working stands on the hub of the wagon wheel in such a position that he

knows a car cannot pass without striking him, he is guilty of negligence as a matter of law, precluding a recovery for his injuries. The fact that a man working in a street for some weeks noticed, whenever he happened to look, that passing cars rang their gongs when men were near the track, does not show an existing custom to do so, or excuse him from failure to use his own senses for his protection where he had no right otherwise to expect warning."

This general conclusion is supported by *Brockschmidt* v. *St. Louis & Meramec River Ry. Co.,* 12 L. R. A. (N. S.) 345; *Kelley* v. *Boston Elevated Ry. Co.,* L. R. A. (N. S.) 282; *Young* v. *Citizens St. Ry. Co.,* 47 N. E. 142; *Hafner* v. *R. R. Co.,* 75 N. W. 1048; *Eddy* v. *Cedar Rapids & M. C. Ry. Co.,* 67 N. W. 676.

To give application to these authorities the following facts, not summed up by either party in the case, were shown in the evidence. The complainant, in a stooping position, was bailing out water which had accumulated during his absence at midday. He was within two feet of the railroad track with his back towards San Juan, from which direction the car came. He had been working for several hours apparently in this stooping position, with one leg a little higher than the other. He had successfully, according to his own statement, retired from his position several times to avoid previous cars that passed. The motorman stated that he saw him and his position of peril within four or five meters, but then was unable to stop his car in time. It is not shown that the motorman could have seen him before. There was evidence tending to show that there was a slight curve and a frequented street before reaching the place of danger, where there was also a mound of earth at the edge of the hole where the plaintiff was working. The contributory negligence of the complainant is evident and there is no reason for the application of the doctrine of the *last clear chance,* a doctrine which does not appear to have been raised in the court below. Complainant failed to show that the defendant could have avoided the accident by the

exercise of the proper care. The complainant was heedless of the approach of the car and, absorbed in getting out the accumulated water, may have leaned over a rail too far, but he was not on the rail and there was nothing in the previous experience of the motorman on approaching this spot to make him realize that the complainant's position of peril would continue; at least he had no such idea until within four or five meters of the place of the accident, when it was too late to stop.

The appellant also complains of the imposition of costs, but we see no particular reason to change the court's discretion in this regard.

This was a case where the appellee insisted that we could not consider the transcript of the stenographer's notes because Act No. 27 of 1917 and Act No. 81 of 1919 were unconstitutional and void for various reasons. These matters have been the subject of a study by the court in a previous opinion, dated July 11, 1922, and so far as our previous opinion supports the constitutionality of the acts, it is reaffirmed. In that opinion we expressed some doubts with regard to the constitutionality of Act No. 81 because it contained more than one subject-matter and made amendments to existing provisions of the Code without incorporating the whole matter amended. While the court has not been free from doubts in regard to the sufficiency of Act No. 81, we think the whole act may be maintained as all the alleged objectionable provisions are in furtherance of the new system of transcribing the evidence first initiated by Act No. 27. In any event, the doubt would make for the affirmance of the case, the conclusion at which we have arrived.

*Affirmed.*

Justices Aldrey and Franco Soto concurred.
Chief Justice Del Toro and Justice Hutchison dissented.